UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VIANCA JEAN ASHLEY FRAZIER,                    Docket 21-cv-8461

                Plaintiff,                           **COMPLAINT**

          v.                                          Plaintiff Demands a Jury Trial

SHS DEVELOPMENT COMPANY, d/b/a THE LOCK
UP SELF STORAGE, DUANE SPENCER, and DALE
MORROW, Individually

                Defendants.
------------------------------------------------------------------------X

Plaintiff, VIANCA JEAN ASHLEY FRAZIER by her attorneys SEKENDIZ LAW FIRM P.C., upon information and belief, complains of defendants as follows:

## NATURE OF THE CASE

**1.** Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. Seq. ("Title VII"), and to remedy violations of state common law based upon the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966), and 28 U.S.C. §1367, and under the laws of the City and State of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against based on her gender and retaliated against.

**2.** Plaintiff further complains pursuant to the laws of the State of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed, discriminated against, and discharged by Plaintiff's former employer on the basis of sexual harassment and retaliation.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 42 U.S.C. §2000e et. Seq ;42 U.S.C. §12101 et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4. Venue is proper in this district based upon the acts of discrimination, which occurred in Westchester County, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff is female.

6. Plaintiff is an American Citizen.

7. Plaintiff is a resident of the State of New York, County of Westchester.

8. Plaintiff was an employee of the defendant SHS DEVELOPMENT COMPANY, d/b/a THE LOCK UP SELF STORAGE (Hereinafter referred to as "SHS")

9. Defendant "SHS" was and still is a foreign corporation conducting business within the State of New York.

10. Defendant "SHS" was and is an Illinois corporation duly authorized and existing under the laws of the State of New York.

11. Defendant "SHS" has offices at 630 Sawmill River Road Ardsley, NY 10502.

12. The defendant "SHS" is a leading provider of affordable storage rental units for personal and business needs. "SHS" has over 40 locations and continue to grow with new storage space nationwide.

13. The defendant "SHS" had authority to hire and fire Plaintiff.

14. The defendant "SHS" had authority to supervise Plaintiff.

15. The defendant "SHS" had authority to determine Plaintiff's pay rate Plaintiff.

16. The defendant "SHS" maintained Plaintiff's employment records.

17. The defendant "SHS" had authority to demote and/or promote Plaintiff.

18. The defendant DUANE SPENCER (Hereinafter referred to as "Duane" was and still is a resident of New York.

19. Defendant Duane was and still is an employee of "SHS."

20. Defendant Duane was Plaintiff's manager.

21. The defendant Duane had authority to hire and fire Plaintiff.

22. The defendant Duane had authority to supervise Plaintiff.

23. The defendant Duane had authority to demote and/or promote Plaintiff.

24. The defendant DALE MORROW (Hereinafter referred to as "Dale" was and still is a resident of Connecticut.

25. Defendant Dale was and still is an employee of "SHS."

26. Defendant Dale was Plaintiff's regional manager.

27. The defendant Dale had authority to hire and fire Plaintiff.

28. The defendant Dale had authority to supervise Plaintiff.

29. The defendant Dale had authority to demote and/or promote Plaintiff.

## PROCEDURAL HISTORY

30. On or about September 24, 2021, Plaintiff filed a charge with the Equal Employment Opportunities Commission. ('EEOC")

31. On or about October 6, 2021, EEOC issued a Right To Sue letter

32. This action was brought within ninety (90) days of receiving the Right To Sue letter.

## MATERIAL FACTS

33. On or about September 30, 2020, Plaintiff was hired by "SHS" as an assistant property manager with a salary of $32,000.00.

34. Plaintiff was sexually harassed by her manager Duane from December of 2020 until July of 2021.

35. After Plaintiff complained to her regional manager, Dale, she was transferred to an undesirable location while her ex-employer chose to take no action against Plaintiff's harasser.

36. By way of example, starting from December of 2020 until January of 2021, approximately three to four times a week Duane Spencer made compliments such as "Your hair looks nice today", or compliment the scent of perfume Plaintiff would wear. As time went on, the statements by Duane gradually shifted from compliments to inappropriate statements about clothing, Plaintiff's overall appearance and suggesting that Plaintiff should wear "high heels" because high heels "turn Duane on."

37. Examples of what Duane has stated to Plaintiff three to four times a week from December 2020 to January 2021 are as follows: "As a part of the dress code you have to wear high heels"; "The customers like when you're in the office, but they have been suggesting you wear high heel shoes"; "You look nice today in your fitted skirt"; "Your wearing thigh highs today"; "I like thigh high socks"; "I like thigh high socks especially when they hug your legs"; "You can't wear thigh high socks. It turns me on."; "Look at you with your big afro and Thigh high socks"; "Your short and I like short women."

38. The defendant Duane would make comments about how Plaintiff's dress fit her body or speak on how Plaintiff's leg warmers looked on her thighs. Plaintiff felt uncomfortable by these remarks.

39. The defendant Duane invited Plaintiff out to lunch and occasional Dinners. Plaintiff had to go on a lunch with him approximately two to four times a month. He would instruct

Plaintiff to send home base emails notifying the employer of Plaintiff and Duane being away for lunch and that Plaintiff sign off on the email instead. Duane would pay for the lunches in full and insist at times that Plaintiff should "order whatever" she wanted and insisted that Plaintiff's drink of choice be "Tequila"or "Honey Jack." At times, Plaintiff tried to cover her portion of the lunch cost but Duane would deny Plaintiff's payment and state "I like to be a gentleman." In between  these lunch and dinner outings Duane would make inappropriate comments to Plaintiff as well.

40.     Plaintiff also noticed that Duane was staring at Plaintiff inappropriately. He would constantly keep staring at Plaintiff's rear end, even when Plaintiff assisted customers. It was at this point that Plaintiff decided to call him out on it and asked him to stop. Examples of times Duane has done this is as follows: While making photocopies or printing paperwork Duane would occasionally gaze and stare at Plaintiff in a very sexual way; Staring into Plaintiff's face directly during our lunch time and commenting on Plaintiff's facial features; Staring at the silhouette of Plaintiff's breasts under her shirt, while Plaintiff was standing up or when Plaintiff was engaging in work conversation with him.

41.     Starting from March 2021 going into July of 2021, Duane gradually began to be more aggressively inappropriate with the Plaintiff. He would often make comments about the size of his penis. He also mentioned how he was observing Plaintiff adjust her tights without me noticing. During this period, three to four times a week Duane stated to Plaintiff: "You are very beautiful"; "You don't really know how beautiful you are"; "You are a pretty girl"; "You have really nice lips"; "Even Your profile features are perfect." (Referring to Plaintiff's face) ; Your arch is insane" (referring to the curve between Plaintiff's back and rear end) ; 'What type of guy are you into?"; "You keep wearing thigh highs"; "A while ago you didn't notice

me, but I watched you adjust your thigh highs in the office. You were wearing a flowy skirt and sexy shoes"; "You are really Short and I like short women"; "I like a woman, that still short in Heels next to me" and "You' are a girl" Plaintiff requested him to stop but he continued making these inappropriate remarks.

42.     On or about May 10th, 2021, Duane invited Plaintiff to lunch. Everything was fine until he started to make sexual comments about Plaintiff's body, and Plaintiff made it clear to him that she was not interested in his advances and articulated that his behavior was inappropriate. Plaintiff told him" I did not like it."  Plaintiff reminded him that he is a married man and what he was doing was wrong. At this point Plaintiff stopped accepting lunch invitations from Duane. After Plaintiff declined his invitations, Duane began to get very aggressive with his behavior. In between these lunch and dinner outings Duane made the following inappropriate comments: "Do you have any tattoos?"; "I can't wait to see all of your tattoos, I'm sure I'll get to see them soon while I explore.";  "Are you on birth control?" "You're gonna get pregnant" "One time Latoya grabbed my dick and said it way too big.  There is no way that thing is going inside of me" ( Latoya is an acquaintance but Plaintiff and Duane happen to both know but ) ; "You're like a Goddess"; "You're like a Goddess, you know that?"

43.     In or around June 2021, Duane began to make random comments about his penis again and other lude sexual comments and inquired about Plaintiff's vagina's details. Plaintiff immediately told him that is not a discussion to be had and that Plaintiff again explained to him that he had crossed the line too many times.

**44.** Inappropriate comments Duane Spencer made in June of 2021 several times a week are as follows: "My penis is a monster"; "You don't want me to stare at your Ass?"; "Do you want me to stop staring at your ass Vee?" What's your Pussy Like?"

**45.** In or around July of 2021 and after Plaintiff refused to accommodate Duane's sexual advances towards Plaintiff, Duane Spencer started to exhibit passive aggressive behavior. After Duane and Plaintiff had an argument, Plaintiff noticed that she was being assigned most of the physical work tasks. Prior to Plaintiff's last rebuff of his advances, this was not the case, as these were shared duties. At this point Plaintiff also began finding urine all over the employee bathroom (in and around the toilet bowl) which Plaintiff had to clean up when she returned to work, even though Duane was present the days prior. In addition, the guest bathrooms started to remain unclean during the weekend and was also left for Plaintiff to clean once she returned. As this was not the case prior to Plaintiff repeatedly rejecting Duane's advances.

**46.** In or about August of 2021, Plaintiff complained to Dale Morrow, the regional manager about the ongoing sexual harassment and retaliation. Dale advised Plaintiff that he would investigate and get back to Plaintiff. In the end, Dale Morrow transferred Plaintiff to defendant's NJ location at 125 Bergen line Ave, Westwood, NJ 07675, which is far away from Plaintiff's house. When Plaintiff asked Dale Morrow as to why Duane Spencer was not the one who is being transferred, Dale Morrow told Plaintiff "Duane is a property manager and has more seniority than you. Therefore, we will not move him. We will move you." When Plaintiff told him that it would be impossible and cost prohibitive for Plaintiff to commute to work from Yonkers, NY, which where Plaintiff lives to Westwood, NJ, he advised Plaintiff that if Plaintiff does not report to work in Westwood, NJ as directed, he was going to be left

with no choice but to terminate Plaintiff's employment. Plaintiff further told Dale Morrow that Plaintiff had to rely on public transportation and travelling from her house to defendant's New Jersey location would take approximately two to two and a half hours in each direction totaling four-to-five-hour daily commute. The daily commute also required Plaintiff to spend an extra $40.00 a day, which equaled a $10,000.00 annual reduction in her salary. Dale Morrow did not respond.

47.     On many occasions and at least twice a month, Duane Spencer made it seem like he had a very close relationship with the regional manager Dale Marrow, which dissuaded Plaintiff from complaining to him at an earlier time. Plaintiff was in fear of losing her job.

48.     On or about September 10, 2021, Plaintiff was constructively discharged from her position.

49.     Plaintiff was expecting to earn $37.000.00 a year including bonuses.

50.     Defendants actions and conduct were intentional and intended to harm the Plaintiff.

51.     After Plaintiff protested to Defendants, Plaintiff became the subject of discriminatory retaliation by Defendants.

52.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

53.     Defendants' discriminatory comments and actions created a hostile working environment, which no reasonable person would tolerate.

54.     As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff suffered severe emotional distress and its ailments.

55.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and Psychological stress.

56. As a result of the above Plaintiff has been damaged in an amount in excess of the jurisdiction of all lower courts.

57. As Defendants' conduct has been willful, outrageous, malicious, Plaintiff also demands punitive damages against Defendants.

58. The defendants exhibited a pattern and practice of discrimination.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. Executive Law § 296 provides that  "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, religion, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

61. Defendant "SHS" engaged in an unlawful discriminatory practice by discriminating against the Plaintiff by allowing Plaintiff to be sexually harassed.

62. Defendant "Duane" engaged in an unlawful discriminatory practice by discriminating against the Plaintiff by sexually harassing her.

63. Plaintiff hereby makes a claim against Defendant SHS and DUANE under all of the applicable paragraphs of Executive Law Section 296.

**AS A SECOND CAUSE OF ACTION
FOR DISCRIMINATION UNDER STATE LAW**

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

"For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

66. Defendants "SHS" and "DALE" engaged in an unlawful discriminatory practice by transferring her to a location which Plaintiff had to commute four to five hours a day, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of defendants.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII AGAINST "SHS"**

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2 provides that (a) It shall be an unlawful employment practice for an employer -

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or

otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

69. Defendant "SHS" engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e-2 by, creating a hostile work environment, and otherwise discriminating against Plaintiff because of Plaintiff's gender by allowing Plaintiff to be sexually harassed.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII AGAINST "SHS"

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

72. Defendant "SHS" engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e-3(a) by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## INJURY AND DAMAGES

73. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, back pay and front pay, emotional pain, physical

pain and suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

Plaintiff hereby demands a jury of all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.  Declaring that the Defendant engaged in unlawful employment practice prohibited by Title VII, state common law, New York State Executive Law §296 et. Seq. and that the Defendant harassed, Discriminated against, constructively discharged, and retaliated against Plaintiff on the basis of sexual harassment.

B.  Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages, past and future, and benefits resulting from Defendants' unlawful constructive termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, NY
   October 12, 2021

              By: _____s/Ismail S Sekendiz/_____

              Ismail S. Sekendiz (IS-0509)
              Attorneys for Plaintiff
              45 Broadway Suite: 1420
              New York, NY 10006
              (212) 380-8087